UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIM PIERCE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civ. A. No. 1:20-cv-00693-ABJ |
| LIFEZETTE, INC., | ) ) ) |
| Defendant. | ) ) |

**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiff Tim Pierce ("Pierce") respectfully requests that the Court enter default judgment against Defendant Lifezette, Inc. ("Lifezette") on all claims. This motion is based on the included statement of points and authorities, the affidavits filed herewith, and all filings and proceedings in this case.

**STATEMENT OF POINTS AND AUTHORITIES**

**I.  Legal Standard**

After entry of a default, a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Factual allegations against the defaulted defendant are taken as true, as a "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002).

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain."

*Id*. (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id*.

**II.    Procedural History**

This is a case of willful copyright infringement in violation of 17 U.S.C. § 501 *et seq.*, and of falsification and removal of copyright management information ("CMI") in violation of 17 U.S.C. § 1202. Doc. 1. Pierce, the copyright owner, filed his complaint on March 10, 2020. *Id*. Lifezette's designated agent for service was personally served with process on March 13, 2020. Doc. 5. Lifezette's answer was due within 21 days thereafter, on or by April 3, 2020. Fed. R. Civ. P. 12(a)(1)(a). It has not filed or served a response, appeared, or communicated with Pierce or his counsel about this action. Doc. 7; Affidavit of Tim Pierce ("Pierce Aff.") ¶ 3; Affidavit of Dan Booth ("Booth Aff.") ¶ 3; Affidavit of J. Matthew Williams ("Williams Aff.") ¶ 3.

Though not required by Rule 55, Pierce made several attempts to kindle a response before pursuing default. The Full Terms of Use Document page on Lifezette's website states that its designated copyright agent is at Cooley LLP. Booth Aff. ¶ 4; Doc. 1 ¶ 29, Doc. 1-3 p. 241. Counsel at Cooley informed Pierce's counsel on March 11, 2020 that Cooley no longer represents Lifezette. Booth Aff. ¶ 5. The Terms of Use page on Lifezette's website states, "If you are concerned we have used a photo belonging to you without permission, please contact us at termsofuse@lifezette.com." *Id.* ¶ 6; see Doc. 1 ¶¶ 24 & 26, Doc. 1-3 pp. 231 & 244. Through counsel, Pierce sent courtesy copies of the initial filings to that email address on April 10, 2020, explaining: "Your registered agent was served with process on March 13, 2020. A timely response to the complaint was due on or by April 3, 2020. You are now in default. If we do not

hear from you by close of business on Monday, April 13, 2020, Mr. Pierce will seek entry of default and proceed toward default judgment." Booth Aff. ¶ 7. Lifezette has not responded. *Id.*

An Affidavit of Service was filed on March 17, 2020. Doc. 5. Pierce requested entry of default on April 20, 2020. Doc. 7. The Clerk entered default on April 22, 2020. Doc. 8. The request for default, supporting affidavit, and entry of default were mailed to Lifezette on May 12, 2020, to the street address listed in its Full Terms of Use Document. Williams Aff. ¶ 4; see Doc. 1-3 p. 244, Doc. 8 p. 3. The mailing was returned as undeliverable, and the same materials were mailed to Lifezette's registered agent and delivered on May 18, 2020. Williams Aff. ¶¶ 4-5.

### III. Relevant Facts

Pierce is a photographer and photojournalist who owns the copyrights in many of his photographs, which he licenses to online and print publications, including the photograph at issue in this action, entitled "Elizabeth Warren and Tim Murray" (the "Photograph"). Doc. 1 ¶¶ 1, 6 & 8; Doc. 1-3 pp. 2-5; Pierce Aff. ¶¶ 1 & 4. Lifezette, a Delaware corporation with a principal place of business in Washington, DC, owns, operates, and controls the website known as LifeZette, located at www.lifezette.com (the "Website"). Doc. 1 ¶ 2.

Pierce's copyrights have been repeatedly infringed through unlicensed publication and display of his photographs on the Website and related social media accounts without attribution. In 2016 he discovered the unauthorized use of two of his photographs, including the Photograph, in connection with five articles published on the Website from May through October 2016. Booth Aff. ¶ 8. Through counsel, Pierce sent letters to Lifezette's predecessor Ingraham Media Group, Inc. ("IMG"), detailing the infringing uses and seeking redress, on November 30, 2016 and January 2, 2017. *Id.* ¶ 9. IMG did not respond. *Id.* Instead, IMG published three more articles featuring the Photograph on its Website in February and March 2017, and prominently displayed

3

the Photograph in Facebook and Twitter posts directing readers to the articles. *Id.* ¶ 10. Through counsel, Pierce drafted a complaint detailing IMG's 2016 and 2017 unauthorized, unattributed uses of his photographs, and sent it to IMG on October 2, 2017. *Id.* ¶ 11 & Ex. A. IMG took down its infringing copies of Pierce's photographs

. *Id.* ¶ 12 & Ex. B.

# REDACTED

Lifezette incorporated in Delaware on October 2, 2017. Doc. 1 ¶ 2. IMG was formally dissolved on December 27, 2017, and Lifezette took control of the Website on or before January 3, 2018. Booth Aff. ¶ 13. Key staff in charge of Website operations stayed on long after the transition. A marketing "Media Kit" available on the Website in early 2017 listed editor-in-chief Laura Ingraham, managing editor Maureen Mackey, and videographer Andrew Brice among IMG's "[e]ditorial leadership." *Id.* ¶ 14 & Ex. C p. 6. Ms. Ingraham was also one of IMG's two executive officers and directors. *Id.* ¶ 15 & Ex. D. Lifezette identifies her as one of its three governors and beneficial owners. *Id.* ¶ 16 & Ex. E. Ms. Mackey replaced Ms. Ingraham as the Website's editor-in-chief in November 2017 and held the position until 2020. *Id.* ¶ 17 & Ex. F.

On the Website, Lifezette states: "LifeZette always seeks permission from copyright owners for photo use. We sometimes use photos when, despite our diligent and good faith efforts, we can't reach the copyright owner." Doc. 1 ¶ 26, Doc. 1-3 pp. 230-231. IMG had the same stated permission policy when it ran the Website. Booth Aff. ¶ 18, Ex. A ¶¶ 35 & 48, Ex. G. Despite that policy, Lifezette knew of Pierce's copyright in the Photograph and knew his contact information, yet never sought his permission to use his Photograph. Doc. 1 ¶¶ 19 & 28.

4

Like IMG before it, Lifezette treated unlicensed use of Pierce's work as fair game, and infringing uses of the Photograph on the Website began again under Lifezette. Lifezette published a video on the Website attributed to Andrew Brice, prominently featuring a copy of the Photograph (the "Video") at least ten times from October 15, 2018 through February 23, 2019. Doc. 1 ¶¶ 14-15, Doc. 1-3 pp. 17-157, Booth Aff. ¶ 19. In early 2019, Lifezette further infringed Pierce's rights in the Photograph by displaying it atop at least three separate articles on the Website, and atop contemporaneous Facebook posts sharing the articles. Doc. 1 ¶¶ 16-17, Doc. 1-3 pp. 158-229. Thereby, Lifezette caused hundreds more infringing acts by Facebook users who shared the Photograph via those infringing posts. Doc. 1 ¶ 17, Doc. 1-3 pp. 198, 209 & 220. And like IMG before it, Lifezette has been unresponsive to Pierce and continues to infringe despite his demands. More than two months after the complaint was duly served, the infringing articles and posts remain live on the Website and Lifezette's Facebook page. Booth Aff. ¶ 20.

## IV.  Argument

The Court should enter a default judgment against Lifezette because Pierce has shown sufficient facts to establish its liability for willful copyright infringement and at least sixteen violations of 17 U.S.C. § 1202. The Court should enter judgment for at least $75,000 in statutory damages under 17 U.S.C. § 504 and at least $200,000 in statutory damages under 17 U.S.C. § 1203, and award Pierce his full costs, including reasonable attorneys' fees, in an amount to be determined after filing of a separate, post-judgment motion under 17 U.S.C. §§ 505 and 1203.

### A.  Pierce has established liability on his copyright infringement claims.

Pierce has demonstrated Lifezette's liability for copyright infringement. A copyright owner has the exclusive rights to reproduce, distribute, and publicly display copies of the copyrighted work. 17 U.S.C. § 106(1), (3), (5). Anyone who violates any of those exclusive rights is an

infringer of the copyright. 17 U.S.C. § 501(a). "To prevail on a copyright claim, a plaintiff must prove both ownership of a valid copyright and that the defendant copied original or 'protectible' aspects of the copyrighted work." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Pierce owns the copyright in his Photograph. Doc. 1 ¶¶ 1 & 8. He took the Photograph, so he is its author. *Id.* ¶¶ 6 & 8. Copyright ownership "vests initially in the author." 17 U.S.C. § 201(a). His copyright registration certificate issued in 2016, within five years after first publication of the Photograph in 2012. Doc. 1-3 p. 5, Doc. 1 ¶¶ 7-8. So the certificate is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," including the facts of his authorship and ownership. 17 U.S.C. § 410(c). It also satisfies the pre-suit registration requirement. 17 U.S.C. § 411(a); *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

Lifezette copied protectable elements of the Photograph. "Depictions of true, factual, scenes in photographs or film may be protected by copyright in light of the 'creative decisions involved in producing a photograph' or video." *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 98 (D.D.C. 2015) (quoting *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)). "[T]he artist who used the camera to produce his picture was entitled to copyright just as he would have been had he produced it with a brush on canvas." *Gross v. Seligman*, 212 F. 930, 931 (2d Cir. 1914) (citing *Burrow-Giles Co. v. Sarony*, 111 U.S. 53 (1884)). Elizabeth Warren stands in the foreground of the Photograph addressing a campaign rally in November 2012, days before her election to the Senate, with then-Lieutenant Governor Tim Murray seated behind her. Doc. 1 ¶ 6; Doc. 1-3 p. 3. Lifezette repeatedly used the same Photograph, cropped to focus even more on its main subject. See Doc. 1-3 pp. 18, 159, 172, 187, 198, 209, 220. "[T]he cropping

appears to be purely functional, giving the Photo the same dimensions as the other images on [Defendant's] website." *Brammer v. Violent Hues, LLC*, 922 F.3d 255, 263 (4th Cir. 2019). Other than that minor cropping, each use was substantially identical to the Photograph and its expressive elements.

Though not required, Pierce has also shown that the principal copyright infringement defenses do not apply. Lifezette contended that it seeks to license photographs from copyright owners, "[e]xcept for photos clearly in the public domain or when [its] use is a fair use." Doc. 1 ¶ 26, Doc. 1-3 p. 231. But as the default admits, "Lifezette knows that the Photograph is not in the public domain, and knows that none of its sixteen uses of the Photograph complies with [Pierce's] CC BY 2.0 License or constitutes fair use." Doc. 1 ¶ 27.

In particular, Pierce made the Photograph available under a Creative Commons Attribution 2.0 Generic license (the "License"), and Lifezette knew his License's terms, but did not comply. *Id.* ¶¶ 9, 18-19. Pierce's License allows others "to reproduce the Work," "distribute copies" of it, and "display publicly … the Work." *Id.* ¶ 11, Doc. 1-3 p. 14 (¶¶ 3(a) & (c)). That broad permission is subject to certain express restrictions. Doc. 1 ¶ 12. Licensees must include a copy of the license or a Uniform Resource Identifier for the license with any copy of the Photograph; may not impose more restrictive terms and conditions than set in the License, and "may not sublicense the Work." *Id.*; Doc. 1-3 pp. 14-15 (¶ 4(a)). Licensees also must give "reasonable" credit to Pierce and to the title of the Photograph. *Id.*; Doc. 1-3 p. 15 (¶ 4(b)). Those License permissions and restrictions apply whether a licensee uses the Photograph ("the Work") itself, or employs it in "Derivative Works or Collective Works." *Id.*; see Doc. 1-3 p. 14 (¶¶ 3(a) & 4(a)).

Those License restrictions are material to Pierce. Pierce Aff. ¶ 5; see *Philpot v. Media Research Ctr., Inc.*, 279 F. Supp. 3d 708, 713 (E.D. Va. 2018) ("attribution was a material term

of the [Creative Commons attribution] license"). Lifezette contravened every one of them. Each copy of the Photograph it distributed and displayed was "without a copy of, or Uniform Resource Identifier for, the license; without appropriate credits identifying Pierce and the title of the Photograph; and with more restrictive terms and conditions for use than the CC BY 2.0 License imposes." Doc. 1 ¶ 38; see *id.* ¶¶ 18-21, 31, 33, 35 & 49-56. And though the License was not sub-licensable, Lifezette purported to grant a license permitting its users to download and print copies of its Website content, including the Photograph. *Id.* ¶ 33. So "Lifezette is not a licensee under Pierce's CC BY 2.0 License." *Id.* ¶ 39. Use "outside the scope of the license" constituted infringement. *Id.* ¶¶ 37-39; *Jacobsen v. Katzer*, 535 F.3d 1373, 1379-80 (Fed. Cir. 2008).

Pierce also established, in his complaint and this motion, that the infringement was willful. Doc. 1 ¶¶ 19, 41 & 46. "Willfulness in this context is established where the infringer knows that his or her action constitutes infringement." *Nat'l Cable TV Ass'n v. Broad. Music, Inc.*, 772 F. Supp. 614 (D.D.C. 1991) (citing *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986)). As Lifezette admits on the Website, its standard practice is to "sometimes use photos" when it has not secured, or even sought, permission from the copyright owner. *Id.* ¶¶ 26 & 40. It made at least sixteen such unauthorized uses, despite knowing that the Photograph was not public domain material and that the uses were not licensed and not fair use. *Id.* ¶ 27. Rather, "Lifezette knew of Pierce's copyright and the terms of use he makes available under the … License, but chose to use the Photograph without complying with those terms." *Id.* ¶ 19.

Key Website personnel knew of Pierce's copyright and License by at latest October 2017, when IMG took his Photograph down from the Website in response to his letter and draft complaint detailing the License terms. Booth Aff. ¶¶ 11-12 & Ex. A. IMG's successor Lifezette retained that knowledge through a "substantial continuity in ownership and staff." *United States*

*ex rel. Fisher v. Network Software Assocs.*, 180 F. Supp. 2d 192, 198-99 (D.D.C. 2002). IMG's executive officer and director Laura Ingraham is one of Lifezette's three governors and owners. Booth Aff. ¶¶ 15-16 & Ex. D-E. Other principal editors overseeing Website operations under IMG also carried on for Lifezette at all material times, from before the 2017 takedown REDACTED through Lifezette's 2018 and 2019 infringing acts: IMG's managing editor Maureen Mackey served as Lifezette's editor-in-chief, and IMG's videographer Andrew Brice created the infringing Video for Lifezette. Booth Aff. ¶¶ 14 & 17, Ex. C & F, Doc. 1-3 pp. 18-19. Because Lifezette is the successor to an infringer of Pierce's copyright, it is ineligible for his broad License without "express permission" from Pierce, which he would not have granted under the License's generous terms. Doc. 1-3 p. 14 (¶ 1(f)) (defining licensee ("You") as entity that "has not previously violated the of this License with respect to this Work, or who has received express permission from the Licensor to exercise rights under this License despite a previous violation") & p. 15 (¶ 7(a)) (providing for automatic termination upon any violation); Pierce Aff. ¶¶ 6-7.

Lifezette was expressly contemplating infringement when it removed the CMI. As alleged, and as conceded by its default, when Lifezette "intentionally removed information identifying Pierce, the title of the Photograph, and the terms and conditions for its use" from the copies of the Photograph displayed in connection with each of its sixteen uses, it had "the knowledge or reasonable grounds to know that [the removal] would enable, facilitate or conceal its own acts of infringement and infringing acts by others." Doc. 1 ¶ 20; *id.* ¶ 53. With its full knowledge that its uses were unauthorized, Lifezette's infringement of Pierce's copyright could only be willful.

"Default establishes [Lifezette's] liability for the well-pleaded allegations of the complaint." *Wondie v. Mekuria*, 742 F. Supp. 2d 118, 122 (D.D.C. 2010). And because Pierce has fully pled willfulness, as summarized above, "these allegations, coupled with the defendant's

default, establish the defendant's liability for willfully infringing on the plaintiff's copyright." *Id.* at 123; *see also Sweet People Apparel, Inc. v. Chang Grp. LLC*, No. CV 16-3139-RSWL-JPRx, 2017 U.S. Dist. LEXIS 87576, at *21 (C.D. Cal. June 6, 2017) ("[O]n a motion for default judgment, courts have presumed that allegations of willfulness are true, and have awarded statutory damages based on willful copyright infringement.").

### B. Pierce has established liability on his copyright management information claims.

Pierce also established every element of his claims that Lifezette falsified and removed the Photograph's CMI. The statutory definition of CMI in 17 U.S.C. § 1202(c) expressly covers many of the forms of information Pierce conveyed immediately below the Photograph on Flickr in 2012 including its title; the name of the photographer and copyright owner (that is, his name); and his terms and conditions for use, highlighted under the "Some rights reserved" hyperlink. Doc. 1 ¶¶ 7, 9-10 & 50-51; Doc. 1-3 pp. 2-3; *see id*. pp. 6-16. Lifezette knew of those terms and the other CMI on the Flickr page but chose to remove and supplant it. Doc. 1 ¶¶ 19-21.

Under the "double scienter requirement" of 17 U.S.C. § 1202(a), knowingly providing false CMI, "*and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement," are both elements of the claim. *Krechmer v. Tantaros*, 747 Fed. Appx. 6, 9 (2d Cir. 2018). 17 U.S.C. § 1202(b) also has a double scienter requirement, in that it requires both (1) intentional CMI removal or alteration, or distributing CMI or copyrighted works with knowledge of such removal or alteration, and (2) the knowledge, or a reasonable basis to know, that it "will aid infringement." *Stevens v. Corelogic, Inc*., 899 F 3d 666, 674 (9th Cir. 2018); *see GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 840 (N.D. Ill. 2019).

Pierce has satisfied the scienter requirement under each subsection of 17 U.S.C. §§ 1202(a) and (b). Lifezette, by its default, concedes that it removed Pierce's CMI "intentionally," "without

license or legal right, and with the knowledge or reasonable grounds to know that it would enable, facilitate, or conceal its own acts of infringement and infringing acts by others." Doc. 1 ¶ 20. Pierce further demonstrated that Lifezette had the same "double scienter" when it falsified the CMI conveyed with each display of the Photograph on its Website. *Id.* ¶¶ 52-55. The Website conveyed false assertions that Lifezette owns or licensed the copyright to all Website content, including the Photograph. Lifezette conveyed those assertions through a false copyright tag ("© 2014-2020 LifeZette. ALL RIGHTS RESERVED"), and through broad claims on its Terms of Use pages that it controlled all copyrighted works on the Website, and could grant users the right to "download and print" all content (including "any and all … photos"), on terms set by Lifezette unilaterally. Doc. 1 ¶¶ 22-34. Lifezette knew that Pierce's rights and the terms of his License directly contradicted those false claims, and forbade its purported sublicense. Its spurious attempt to supplant Pierce's role as the authorized copyright licensor, in order to smooth the path for further infringements on the Website, Facebook, and elsewhere, violated 17 U.S.C. § 1202.

Lifezette knew that future infringements would likely result from its CMI violations, and actively fostered those infringements. Lifezette purported to license Website readers to download and print copies all content, thereby encouraging the creation of additional infringing copies of the Photograph beyond the scope of Pierce's License. Doc. 1 ¶ 33, Doc. 1-3 pp. 234-35 (¶¶ 2.1-2.2). Lifezette generated the Video in October 2018, affording itself a means to infringe again by adding the Video to a slew of articles about Senator Warren over the next four months. Doc. 1 ¶¶ 14-15. Featuring the Photograph in three more articles in 2019 gave Lifezette a launching pad to further infringe by posting those articles and the Photograph to Facebook. *Id.* ¶¶ 16-17. In turn, via those Facebook posts, Lifezette allowed and "caused" third-party distributions via Facebook shares that were all outside the scope of Pierce's License, and therefore all infringing. *Id*.

### C. Pierce is entitled to statutory damages.

On both causes of action, Pierce may elect to recover statutory damages in lieu of Lifezette's profits and actual damages. 17 U.S.C. §§ 504(c)(1) & 1203(c). Pierce prayed for such relief. Doc. 1 p. 13 (Prayer for Relief ¶¶ 4 & 6). Statutory damages are appropriate in this case because Lifezette failed to cooperate in the calculation of damages. *See GC2*, 391 F. Supp. 3d at 851 (citing *Curet-Velazquez v. ACEMLA de P.R., Inc.*, 656 F.3d 47, 59 (1st Cir. 2011)). Lifezette profited from its infringing acts, though the extent of its gains are unknown. Doc. 1 ¶ 42. "As there has been no discovery in this case, it is not possible to ascertain the extent to which defendant has profited from the unauthorized use of plaintiff's Registered Work." *SweepMasters Prof'l Servs., LLC v. Vanessa Servs.*, No. 1:16-cv-439, 2017 U.S. Dist. LEXIS 146011, *17-18 (E.D. Va. July 5, 2017) (recommending awards of $75,000 under 17 U.S.C. § 504 and $25,000 maximum under 17 U.S.C. § 1203), *adopted*, 2017 U.S. Dist. LEXIS 145118 (Sept. 7, 2017).

Pierce is injured both by Lifezette's acts of copyright infringement and by its CMI violations that assisted in its infringing acts. See Doc. 1 ¶ 57. His two most popular photographs for licensing are the Photograph and another photograph of Elizabeth Warren that IMG also previously used without permission. Pierce Aff. ¶ 7. While his License generously makes those photographs available for use with due attribution, Lifezette has not credited him for any of its uses of the Photograph, and Lifezette is ineligible for his License as the successor to IMG's past infringements on the Website. See Doc. 1-3 p. 14 at ¶ 1(f). Due to that history of noncompliance on the Website, Pierce would not have granted Lifezette the License's generous terms. Pierce Aff. ¶ 7. If he were willing to permit Lifezette's uncredited uses of the Photograph, Pierce would have demanded at least $180,000, **REDACTED** . *Id.*

12

"A copyright infringer is liable for statutory damages ranging from $750 to $30,000 [per infringed work] as a court considers just." *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 83 (D.D.C. 2003) (citing 17 U.S.C. § 504(c)(1)). "In cases where the infringement was willfully committed, statutory damages may be awarded up to $150,000 per infringement." *Id.* (citing 17 U.S.C. § 504(c)(2)). That broader range is available because Lifezette's infringement was willful, and "willful infringement increases the range for statutory damages." *Id.* at 84.

"An infringer willfully infringes if he has actual knowledge of his infringement or if he recklessly disregards the possibility of infringing a copyright." *Id.* Lifezette's wanton disregard for Pierce's rights was highly willful. After IMG **REDACTED** infringements on the same Website, Lifezette saw fit to infringe again and again under the same leadership. It maintained IMG's self-permissive permissions policy, with its cavalier admission of routine infringement: "We sometimes use photos when, despite our diligent and good faith efforts, we can't reach the copyright owner." Doc. 1 ¶ 26; Booth Aff. ¶ 18. Lifezette contravened even that pliable policy, as it knew Pierce's contact information and the terms of his standard License, but chose to neither contact him nor comply with his terms. Doc. 1 ¶¶ 19, 28 & 36. The infringement "was not just willful but reflected a gross disregard for the rights of copyright holders." *Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 U.S. Dist. LEXIS 112436, *46 (S.D.N.Y. Aug. 13, 2014). Indeed, Lifezette knew that its only stated exceptions to its policy did not apply: the Photograph is not "in the public domain" and Lifezette's uses were not "fair use." Doc. 1 ¶¶ 26-27. And by its default, Lifezette admits that it acted deliberately: "Lifezette knew of Pierce's copyright and the terms of use he makes available under the CC BY 2.0 License, but chose to use the Photograph without complying with those terms." *Id.* ¶ 19.

For the CMI violations, statutory damages awards range from $2,500 to $25,000 "for each violation of section 1202." 17 U.S.C. § 1203(c)(3)(B). Those awards are not duplicative of the damages awarded for copyright infringement. See *GC2*, 391 F. Supp. 3d at 851. CMI damages awards are for "each violative act performed," calculated based on "the number of times the [work] was posted on the Internet." *Stockier Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008). Pierce has established at least sixteen violations of section 1202. See *Sheldon v. Plot Commerce*, No. 15 CV 5885 (CBA) (CLP), 2016 U.S. Dist. LEXIS 116135, *45-46 (E.D.N.Y. Aug. 26, 2016) (finding "each act of removal and each act of addition of copyright information" was a "separate violation" of section 1202, permitting the plaintiff to recover multiple damages awards), *adopted*, 2016 U.S. Dist. LEXIS 127414 (Sept. 16, 2016)). Lifezette published its Video featuring the Photograph ten times: by itself on October 15, 2018, and in the midst of nine other articles through February 2019. Doc. 1 ¶¶ 14-15. Separately, it published the Photograph on three more Website articles, and in three Facebook posts republishing those articles and the Photograph. *Id*. ¶¶ 16-17. Each time, Lifezette intentionally removed Pierce's CMI, and replaced it with false CMI that portrayed the Photograph as Lifezette property. He is entitled to at least sixteen awards within the statutory range.

"Statutory damages are not designed to be merely compensatory or restitutionary, but are also meant to discourage wrongful conduct." *Harrison Music*, 293 F. Supp. 2d at 83 (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001)); accord *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952). "[T]he modern Copyright Act's statutory damages regime has a significant deterrent and potentially punitive purpose." *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, 948 F.3d 261, 272 (5th Cir. 2020). And "[l]ike statutory damages under § 504(c), the structure of statutory damages under §

1203 indicates an intent to deter, not just compensate. The court may treble damages, including statutory damages, if the defendant is a repeat offender." *Id.* at 276.

"Maximum statutory damages have been awarded in similar cases." *Sony/ATV Publ'g LLC v. 1729172 Ont., Inc.*, No. 3:14-cv-1929, 2018 U.S. Dist. LEXIS 140856, *25-27 (M.D. Tenn. Aug. 20, 2018) (collecting cases). The statutory maximums for damages are $150,000 for willful copyright infringement per work and $25,000 per CMI violation. Pierce requests only half of that: $75,000 for infringement under section 504, and $12,500 for each of 16 CMI violations, totaling $200,000, under section 1203. No lesser remedy is adequate to redress Lifezette's deliberate violations of Pierce's rights. *See Harrington v. Equity Asset & Prop. Mgmt, Inc.*, No. 3:18-cv-00216-GPC-NLS, 2020 U.S. Dist. LEXIS 6105, *25 (S.D. Cal. Jan. 14, 2020) (awarding $75,000 in statutory damages under section 504 on default judgment for willful infringement of single photograph); *Sheldon*, 2016 U.S. Dist. LEXIS 116135, *47-51 (awarding maximum statutory damages under section 1203 of $25,000 for each of 20 violations on default judgment where defendant knowingly reproduced plaintiff's photograph with CMI removed and falsified).

Lifezette infringes as a matter of standard practice. It used the Photograph, and removed and falsified its CMI, for commercial purposes. Its violations are flagrant and ongoing, and amount to repeat infringements. Lifezette followed in IMG's footsteps by using and reusing the Photograph without Pierce's consent.     **REDACTED**     Lifezette committed renewed violations in 2018 and 2019, under the same part-owner and key editorial staff who carried over from IMG. Even this lawsuit has not persuaded it to take the Photograph down or comply at last with the License. And it declined to defend. Lifezette's heedless repetition of IMG's pattern of violations strongly supports substantial awards of compensatory, deterrent, and punitive relief.

15

### D. Pierce is entitled to a permanent injunction.

Pierce is entitled to injunctive relief prohibiting Lifezette from further infringing his copyright. See Doc. 1 p. 13 (Prayer for Relief ¶ 2). The Court is authorized to grant permanent injunctions, "on such terms as it may deem reasonable," to prevent or restrain copyright infringement and violations of section 1202. 17 U.S.C. §§ 502 & 1203(b)(1). "A plaintiff in a copyright action is entitled to an injunction when he establishes a threat of continuing infringement." *Harrison Music*, 293 F. Supp. 2d at 83.

An injunction is warranted because Pierce has established that Lifezette and its predecessor IMG repeatedly infringed upon his copyright by publicly displaying and distributing the Photograph without a license. *See id.*; *MOB Music Publ'g v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 208 (D.D.C. 2010). Pierce documented IMG infringing his copyrights and violating his section 1202 rights at least seventeen times in 2016 and 2017, across the Website its social media accounts. Booth Aff. ¶¶ 8-11 & Ex. A. **REDACTED** Lifezette committed at least sixteen more infringing acts and section 1202 violations in 2018 and 2019. Doc. 1 ¶¶ 13-19. Without an injunction, Lifezette "will continue to violate copyright laws"; its "past infringement is sufficient to show a pattern and propensity to violate copyright law." *Harrison Music*, 293 F. Supp. 2d at 83; *accord Lifted Research Group, Inc. v. Behdad*, 591 F. Supp. 2d 3, 7-8 (D.D.C. 2008). A permanent injunction is therefore appropriate.

### E. Pierce is entitled to recover his costs and attorneys' fees.

As the prevailing party on both causes of action, Pierce is entitled to recover his full costs and his reasonable attorneys' fees in the Court's discretion. 17 U.S.C. §§ 505 & 1203(b)(4)-(5). Pierce prayed for such relief. Doc. 1 pp. 13-14 (Prayer for Relief ¶¶ 5, 7 & 8). Courts often order that fee-shifting is appropriate as part of judgment on the merits, before the prevailing party

16

submits its motion itemizing and proving its incurred fees. *See Whitehead v. Columbia Pictures Indus.*, No. 98-2938 (PLF), 2000 U.S. Dist. LEXIS 22188, *41, *43-44 (D.D.C. June 14, 2000) ("Attorneys' fees will be awarded. … Defendants shall file any motion or motions for attorneys' fees and costs, accompanied by appropriate memoranda of law with affidavits or declarations, within thirty days of the date of this Judgment."), *summary affirmance*, No. 00-7169, 2001 U.S. App. LEXIS 2746 (D.C. Cir. Jan. 19, 2001); *accord Hart v. Sampley*, No. 91-3068 (CRR), 1992 U.S. Dist. LEXIS 21478, *10 (D.D.C. June 24, 1992); *Sigler v. Nat'l Network of Asian & Pacific Women*, No. 86-0017 TPJ/ALB, 1987 U.S. Dist. LEXIS *46, **48-49 (D.D.C. July 31, 1987); *Unitronics 1989 R''G Ltd. v. Gharb*, 85 F. Supp. 3d 118, 132-33 (D.D.C. 2015) (patent case).

Awarding Pierce full recovery will serve the purposes of the Copyright Act. "The Copyright Act seeks to stimulate artistic creativity for the general public good and discourage infringement." *Harrison Music*, 293 F. Supp. 2d at 84 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526-27 (1994)). "Awarding attorney's fees addresses these goals because it enables people to vindicate or defend their rights where it would otherwise be uneconomical to do so." *Id.* (citing *Fogerty*, 510 U.S. at 529)); accord *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) ("fee awards under § 505 should encourage the types of lawsuits that promote those purposes"); *Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579, 581 (D.D.C. 1981).

Courts analyzing fee requests under section 505 of the Copyright Act are guided by several nonexclusive factors approved by the Supreme Court: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). Section 505 "grants courts wide latitude to award attorney's fees based on the totality of

the circumstances in a case." *Kirtsaeng*, 136 S. Ct. at 1985. The Court may award fees "to deter repeated instances of copyright infringement." *Id.* at 1989.

All relevant considerations support an award of attorneys' fees. It was objectively unreasonable for Lifezette to take over the Website and infringe anew, in spite of IMG's prior infringements. Finding bad faith in Lifezette's egregious pattern of infringement and refusal to defend is wholly warranted. "In response to [Pierce's] multiple warnings and attempts to obtain compliance, [Lifezette] simply thumbed their noses at their legal obligations. This is a textbook case of the need to encourage the bringing of such actions where attempts to resolve the matter have been repudiated." *EMI April Music, Inc. v. Rodriguez*, 691 F. Supp. 2d 632, 637 (M.D.N.C. 2010) (granting section 505 fees upon default judgment). And without fees, an award for damages may be "insufficient to deter future copyright infringements such as the one at issue here." *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996). The Court should find that Pierce is entitled to his reasonable attorney's fees and costs.

Pursuant to Fed. R. Civ. P. 54(d) and LCvR 54.1(a), Pierce will file a bill of costs and a motion for attorneys' fees shortly after the Court issues a default judgment.

**V.     Conclusion**

Wherefore, Plaintiff Tim Pierce respectfully requests that the Court enter judgment against Defendant Lifezette, Inc. for damages in the amount of at least $75,000 in statutory damages under 17 U.S.C. § 504 and at least $200,000 in statutory damages under 17 U.S.C. § 1203, enter a permanent injunction against any further unlicensed use of the Photograph, and find that Pierce is entitled to taxation of costs and an award of his reasonable attorneys' fees.

Dated: May 29, 2020

Respectfully submitted,

<u>/s/ J. Matthew Williams</u>
J. Matthew Williams (D.C. Bar No. 501860)
MITCHELL SILBERBERG & KNUPP LLP
1818 N Street NW, 7th Floor
Washington, DC 20036
(202) 355-7904
mxw@msk.com

Dan Booth (admitted *pro hac vice*)
DAN BOOTH LAW LLC
60 Thoreau Street #121
Concord, MA 01742
dan@danboothlaw.com

*Attorneys for Plaintiff Tim Pierce*