UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIM PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-0693 (ABJ) |
| ) | |
| LIFEZETTE, INC., ) | ***SEALED*** |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

On March 10, 2020, plaintiff Tim Pierce, a photographer, sued defendant Lifezette, Inc., alleging copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1202.  Compl. [Dkt. # 1]. Defendant never responded, and now plaintiff is seeking statutory damages, a permanent injunction, and costs and attorneys' fees.  Pl.'s Mot. for Default J. [Dkt. # 10] (SEALED) ("Mot.") at 10–18.  For the following reasons, the Court will grant plaintiff's motion for default judgment, permanently enjoin defendant from further infringing the copyright, and enter judgment in the amount of $139,000, plus costs and attorneys' fees.

**BACKGROUND**

Plaintiff is a photographer and photojournalist who licenses copyrighted photographs to online and print publications.  Compl. ¶ 1.  On November 2, 2012, plaintiff captured a photograph depicting Massachusetts Senator Elizabeth Warren and then-Massachusetts Lieutenant Governor Tim Murray entitled "Elizabeth Warren and Tim Murray" ("Photograph") at an Elizabeth Warren

1

campaign rally.  Compl. ¶ 6.  Plaintiff is the author of the photograph and he has continuously owned all rights to it, including its copyright.  Compl. ¶ 8.

On November 3, 2012, plaintiff uploaded the Photograph to the website Flickr; it can be found at https://www.flickr.com/photos/qwrrty/8152000142/ ("Flickr Page").  Compl. ¶ 7; Ex. A to Compl. [Dkt. # 1-3].[1]  The Photograph was available on the Flickr Page under a "Creative Commons Attribution 2.0 Generic [L]icense" ("CC License").  Compl. ¶ 9.  The Flickr Page includes plaintiff's name, the Photograph's title, and a "prominent statement '[s]ome rights reserved'" highlighted as a hyperlink which directs to a summary of the CC License's terms.  Compl. ¶ 9; Ex. A; Ex. C.  The summary states "[y]ou must give **appropriate credit**, provide a link to the license, and **indicate if changes were made**.  You may do so in any reasonable manner, but not in any way that suggests the licensor endorses you or your use."  Ex. C at 1 (bold and underline in original).  The words "appropriate credit" and "indicate if changes were made" are hyperlinked and direct to a pop-up window stating "[i]f supplied, you must provide the name of the creator and attribution parties, a copyright notice, a license notice, a disclaimer notice, and a link to the material."  Compl. ¶ 9; Ex. D at 1.

The summary also includes a hyperlink to the full CC License.  Compl. ¶ 10; Ex. C.  While the CC License grants "licensees a worldwide, royalty-free, non-exclusive license to reproduce, publicly display, and distribute copies of the licensed work . . . in all media and formats," this grant requires a licensee to, among other things, "give the original author . . . credit."  Compl. ¶¶ 11–12; Ex. E at 2–3.

---

1   All exhibits are to the complaint unless otherwise noted, and all exhibits to the complaint are found in Dkt. # 1-3.

In short, as of 2012, a party interested in publishing the photograph could have done so at no cost as long as it provided plaintiff with the attribution to which he was entitled.

The complaint also alleges that in 2016, plaintiff registered the Photograph with the United States Copyright Office ("Copyright Office") and received a Certificate of Registration effective November 28, 2016.  Compl. ¶ 8; Ex. B.

Defendant owns, operates, and controls the website Lifezette located at "www.lifezette.com" ("Website").  Compl. ¶ 2.  On multiple occasions after plaintiff registered the Photograph with the Copyright Office, defendant, without plaintiff's permission or authorization, "reproduced and displayed copies of the Photograph on [its] Website and elsewhere without attribution" and without complying with the CC License.  Compl. ¶¶ 13, 18.  Defendant published the Photograph on its website without permission or attribution at least thirteen times.  Compl. ¶¶ 14–16; Exs. G–R.  Defendant also "reproduced and displayed copies of the Photograph on Facebook when it shared those articles through posts on Lifezette's Facebook account" at least three times.  Compl. ¶ 17; Exs. S–U.  Because these Facebook posts were shared "hundreds" of times, defendant "caused hundreds of additional acts of infringement."  Compl. ¶ 17.  All of the sixteen uses failed to comply with the CC License because none of the web pages or videos included plaintiff's name, the title of the Photograph, a link to the license, or a copy of the license.  Compl. ¶ 18.  According to the complaint, defendant also "intentionally removed information identifying Pierce, the title of the Photograph, and the terms and conditions for its use."  Compl. ¶ 20.  In fact, more than two months after the complaint was served, the infringing articles and posts were still on the Website and defendant's Facebook page.  Mot. at 5; Aff. of Dan Booth [Dkt. # 10] ("Booth Aff.") ¶¶ 19–20.

Not only did defendant fail to identify plaintiff as the owner of the Photograph, but it posted copyright management information that falsely identified it as the copyright owner; each Website page displaying the Photograph includes (1) a copyright tag stating "© 2014-2020 LifeZette. ALL RIGHTS RESERVED," and (2) a hyperlink display to the Website's Terms of Use which claims either ownership or licensed use of the Photograph. Compl. ¶¶ 22–26; Ex. V and Ex. W. The Full Terms of Use Document ("Terms of Use") further purports that all images on the Website "belong[]" to defendant. Compl. ¶¶ 29–35; Ex. W.

Plaintiff also points to evidence to suggest that none of this is inadvertent. Defendant is the successor to the now-defunct Ingraham Media Group, Inc. ("IMG"). Mot. at 3. In 2016, plaintiff "discovered the unauthorized use of two of his photographs, including the Photograph" in five articles published on IMG's website. *Id.* Plaintiff contacted IMG regarding its infringing use of the Photograph, but it did not respond, and it proceeded to publish "three more articles featuring the Photograph." Booth Aff. ¶¶ 9–10. In October 2017, plaintiff reached a settlement with IMG in which he released IMG from any copyright violations made prior to October 2017 in return for $60,000. Booth Aff. ¶ 12; Ex. B to Mot. [Dkt. # 10] at 1. On December 27, 2017, "IMG was formally dissolved." Booth Aff. ¶ 13.

On January 3, 2018, defendant Lifezette "registered with the [District of Columbia's Department of Consumer and Regulatory Affairs] as a foreign corporation" and "took control of [IMG's] Website on or before that date." Booth Aff. ¶ 13. Multiple members of IMG's editorial staff transitioned to defendant Lifezette, and IMG's "part-owner" became a "part-owner" of defendant. Booth Aff. ¶¶ 14–18; Mot. at 9, 15 ("IMG's managing editor Maureen Mackey served as Lifezette's editor-in-chief, and IMG's videographer Andrew Brice created the infringing Video for Lifezette.").

4

On March 10, 2020, plaintiff filed a complaint alleging copyright infringement by Lifezette in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1202. Compl. ¶¶ 40–58. On March 13, 2020, at 1:15 PM, Lifezette, Inc. was duly served at 1090 Vermont Avenue, NW, Washington, DC 20005. Aff. of Service [Dkt. # 5] at 1. The summons notified defendant that "[w]ithin 21 days after service of this summons on you . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure . . . If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint." *Id.* at 2. Defendant never responded to the summons. *See* Request for Entry of Default [Dkt. # 7] at 1. Plaintiff made multiple additional attempts to serve defendant beyond what was required by the Federal Rules, including contacting defendant's "designated copyright agent" and e-mailing courtesy copies to defendant's dedicated copyright-related e-mail address. Mot. at 2–3; Booth Aff. ¶¶ 4–7.

On April 20, 2020 – more than twenty-one days after attempted service – plaintiff requested that the Clerk of Court enter a Default against defendant, Mot. at 3, and two days later the Clerk of Court declared defendant was in default. Clerk's Entry of Default as to Lifezette, Inc. [Dkt. # 8]. On May 12, 2020, the request for default was mailed to defendant at "the street address listed in its Full Terms of Use Document," 1055 Thomas Jefferson Street, Suite 301, Washington, DC 20007, but was returned as undeliverable. Mot. at 3; Aff. of J. Matthew Williams, Ex. G to Mot. [Dkt. # 10] ("Williams Aff.") ¶ 4. On May 18, 2020, the same materials were mailed and delivered to defendant's registered agent at 1090 Vermont Avenue, NW, Washington, DC 20005. Mot. at 3; Williams Aff. ¶ 5.

Receiving no response, plaintiff filed the instant motion for default judgment on June 2, 2020. Plaintiff requests (1) "at least $75,000 in statutory damages under 17 U.S.C. § 504"; (2) "at least $200,000 in statutory damages under 17 U.S.C. § 1203"; and (3) "full costs, including reasonable attorneys' fees . . . under 17 U.S.C. §§ 505 and 1203." Mot. at 5.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure empower district courts to enter default judgment against a defendant that fails to defend its case. Fed. R. Civ. P. 55(b)(2); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). While federal policy generally favors resolving disputes on the merits, default judgment is appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (internal quotation marks omitted).

Obtaining default judgment is a two-step process. Fed. R. Civ. P. 55(a–b). First, the plaintiff must request that the Clerk of Court enter default against the party that has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). The Clerk's entry of default establishes the defendant's liability for the well-pleaded allegations of the complaint. *Bola Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971). Second, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At the default judgment stage, the plaintiff "must prove [his] entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal citations and quotation marks omitted).

"The determination of whether default judgment is appropriate [under Rule 55(b)(2)] is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund*

v. *Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008), citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). "[T]he defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (internal quotation marks omitted). While "[d]efault establishes the defaulting party's liability for the well-pleaded allegations in the complaint," *Fanning v. Wegco, Inc.*, 5 F. Supp. 3d 1, 4 (D.D.C. 2013), it does not "establish liability for the amount of damage that the plaintiff claims." *Id.* The court must independently determine the "sum to be awarded." *Id.*, citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).

## ANALYSIS

**I.   The Court will grant plaintiff's motion for default judgment because defendant's acts give rise to liability under 17 U.S.C. § 101 *et seq.* and 17 U.S.C. § 1202.**

Plaintiff, in compliance with Federal Rule of Civil Procedure 55(a) and (b), requested that the Clerk of Court enter default against defendant and applied to this Court for a default judgment. *See generally* Mot. Default judgment will therefore be granted if "the complaint states a claim for relief." *Jackson*, 564 F. Supp. 2d at 27.

The complaint contains two claims. Count One alleges the willful infringement of plaintiff's copyright in the Photograph in violation of 17 U.S.C. §§ 504 and 505. Compl. ¶¶ 43–47. Count Two alleges that Lizette knowingly provided and distributed false copyright information for the Photograph with the intent to induce, enable, facilitate, or conceal copyright infringement, in violation of the Digital Millennium Copyright Act, 17 U.S.C. §1202(b). Compl. ¶¶ 48–58.

7

A.        **Copyright Act of 1976, 17 U.S.C. § 101** *et seq.*

"A plaintiff seeking to establish copyright infringement must prove '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Stenograph LLC v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998), quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).

1.        **Plaintiff owns a valid copyright to the Photograph.**

"Copyright in a work . . . vests initially in the author [] of the work."  17 U.S.C. § 201. Plaintiff alleges he personally captured the Photograph in 2012, making him the Photograph's "author." Compl. ¶¶ 6, 8; Mot. at 6.  In 2016, plaintiff registered the Photograph with the Copyright Office and received a "Certificate of Registration" naming him the "Copyright Claimant" and granting him "Rights and Permissions."  Compl. ¶ 8; Ex. B.  This Certificate of Registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).

2.        **Defendant copied original aspects of the copyrighted Photograph.**

To prove a defendant copied an original aspect of a copyrighted work, "a plaintiff must establish actionable copying" meaning "actual copying and substantial similarity" to "protectible aspects of the [copyrighted] work."  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295–96 (D.C. Cir. 2002).  "'Substantial similarity' exists where the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."  *Id.* at 1296 (internal citations and quotations omitted).  Photographers are entitled to copyright protection over their photographs.  *See Burrow-Giles Co. v. Sarony*, 111 U.S. 53, 60 (1884).

Here, defendant actually copied plaintiff's protected photograph, and the copies were substantially similar to the original. On at least sixteen occasions, defendant reproduced the photograph in its original form or cropped on its Website and on Facebook. Compl. ¶¶ 14–17; Exs. G–U; Mot. at 6–7. Other than the cropping, which "appears to be purely functional, giving the Photo[graph] the same dimensions as the other images on [defendant's] [W]ebsite," *Brammer v. Violent Hues, LLC*, 922 F.3d 255, 263 (4th Cir. 2019), each use was "substantially identical to the Photograph and its expressive elements." Mot. at 6–7, *see* Exs. G–U. Plaintiff's proof that defendant both actually copied the protected copyrighted Photograph and reproduced it in a substantially similar manner supports his claim for damages under 17 U.S.C. § 101 *et seq.*

B. **Digital Millennium Copyright Act, 17 U.S.C. § 1202.**

The Digital Millennium Copyright Act makes it unlawful to provide or distribute false copyright management information ("CMI") and to remove or alter it. *See* 17 U.S.C. § 1202(a), (b). The statute defines the term "copyright management information" as:

> [A]ny of the following information conveyed in connections with copies . . . of a work . . . :
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright . . . [and]
>
> * * *
>
> (6) Terms and conditions for the use of a work.

17 U.S.C. § 1202(c).

Section 1202(a) makes it unlawful to:

9

>knowingly and with the intent to induce, enable, facilitate, or conceal infringement—
>
>(1) provide copyright management information that is false, or
>
>(2) distribute or import for distribution copyright management information that is false."

17 U.S.C. § 1202(a).

Section 1202(b) states that:

>No person shall, without the authority of the copyright owner or the law—
>
>(1) intentionally remove or alter any copyright management information, [or]
>
>(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law,
>
>* * *
>
>knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

Sections 1202(a) and (b) both contain what is referred to as a "double-scienter" requirement. *See Krechmer v. Tantaros*, 747 Fed. Appx. 6, 9 (2d Cir. 2018) (section 1202(a)); *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 171–72 (2d Cir. 2020) (section 1202(b)). Under section 1202(a), a plaintiff must plausibly allege "that defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer*, 747 Fed. Appx. at 9 (emphasis in original). Under section 1202(b), a plaintiff must plausibly allege "(1) the existence of CMI on the allegedly infringed work, (2) the removal or alteration of that information and (3) that the removal was intentional." *Fischer v. Forrest,* 968 F.3d 216, 223 (2d Cir. 2020); *Mango*, 970 F.3d at 171.

Plaintiff has plausibly alleged a violation of both sections of the statute. For purposes of section 1201(b), he has asserted that there was copyright management information as defined in the statute on the infringed work: information identifying the author, the title of the photograph, and the terms and conditions. *See* 17 U.S.C. § 1202(c). He then alleges, for purposes of section (b), that defendant "intentionally removed information identifying [plaintiff], the title of the Photograph, and the terms and conditions for its use" from the Photograph displayed on its Website. Compl. ¶¶ 20, 50–53. With respect to section (a), plaintiff alleges that after defendant removed his information, it "falsified the CMI conveyed with each display of the Photograph on its Website," Mot. at 10–11, knowing that doing so would conceal the infringement. *Id.* Plaintiff claims that the "false copyright tag" and "broad claims on [defendant's] Terms of Use pages" enabled and concealed this infringement because it "supplant[ed] [plaintiff's] role as the authorized copyright licensor . . . [allowing] further infringements." *Id.* at 11. The new, altered photograph was then distributed via defendant's Website. *See* Compl. ¶¶ 14–17. The allegation that defendant intentionally removed plaintiff's CMI in violation of section (b) also supports a plausible inference for purposes of section (a) that defendant knew the information it was transmitting was false. In sum, plaintiff has stated a proper claim for damages under 17 U.S.C. §§ 1202(a) and (b).

## II. Damages

When a defendant has failed to respond to a complaint, the Court must make an independent determination – relying on affidavits and documentation – of the sum to be awarded as damages. *Ventura*, 134 F. Supp. 3d at 104. The court "has considerable latitude in determining the amount of damages." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011), citing *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). It is plaintiff's burden

to "prove [] damages to a reasonable certainty." *Ventura*, 134 F. Supp. 3d at 104, citing *Boland*, 763 F. Supp. 2d at 68.

Plaintiff has elected to recover statutory damages "in lieu of [defendant's] profits and actual damages." Mot. at 12; Compl. ¶ 4, 6; *see* 17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action."); *see also* 17 U.S.C. § 1203(c)(3)(B) ("At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202."). "[T]he availability of statutory damages is not contingent on the demonstration of actual damages." *Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011). Statutory damages act as both restitution and deterrence. *See Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 83 (D.D.C. 2003), citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113–14 (2d Cir. 2001).

With respect to Count One, pursuant to 17 U.S.C. § 504(c)(1), a plaintiff may recover statutory damages "in a sum of not less than $750 or more than $30,000" per work "as the court considers just." If the "infringement was committed willfully, the court in its discretion may increase the award of statutory damages [under section 501] to a sum of not more than $150,000" per work. 17 U.S.C. § 504(c)(2).

"Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement. A plaintiff is not required to show that the defendant had knowledge that its actions constituted an infringement." *Yurman Design, Inc.*, 262 F.3d at 112 (internal citations, brackets and quotation marks omitted).

As to Count Two, plaintiff may recover damages "for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B).

12

Plaintiff requests $275,000 in damages: $75,000 for the willful violation of 17 U.S.C. § 504 and $12,500 for each of the sixteen violations of 17 U.S.C. § 1202. Mot. at 5, 15.

The Court agrees that the violation of the Copyright Act was willful: (1) defendant "knew of [plaintiff's] copyright and the terms of use . . . but chose to use the Photograph without complying with those terms," (2) "[k]ey Website personnel know of [plaintiff's] copyright and License by at least October 2017," and (3) defendant "intentionally removed information identifying [plaintiff], the title of the Photograph, and the terms and conditions for its use from the copies of the Photograph displayed" on its website. Mot. at 8–9; Compl. ¶¶ 26, 40; Booth Aff. ¶¶ 11–12. All of this supports a finding that defendant acted with actual knowledge of, or reckless disregard for, plaintiff's rights.

Count Two alleges sixteen violations of section 1202 because each unauthorized post on the internet constitutes a separate violation. Mot. at 14 (Defendant "published its [v]ideo featuring the Photograph ten times . . . [and] published the Photograph on three more Website articles, and in three Facebook posts republishing those articles."); *see also Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267 (S.D. Fl. 2008) ("[F]or purposes of [section] 1202 . . . [d]efendants posted the Unauthorized Product on to the internet on three separate occasions, and therefore committed three violative acts."). Plaintiff notes that his request of $12,500 per violation amounts to only half of the maximum statutory damages. Mot. at 15.

Plaintiff also explains that he usually grants a free license to use his photographs "for any purpose including commercial use, subject to the license's few conditions, including the requirement of attribution." Compl. ¶¶ 11, 35. But he states that IMG's previous copyright violation rendered it "ineligible for his License as the successor to IMG's past infringements on the Website." Mot. at 9 ("Because [defendant] is the successor to an infringer of [plaintiff's]

copyright, it is ineligible for his broad License without 'express permission' from [plaintiff], which he would not have granted under the License's generous terms."). Therefore, he informs the Court, had defendant asked for permission to use the Photograph, he would not have granted a free license, but would have "demanded at least $180,000, triple the $60,000 amount that IMG paid in settlement." *Id.* at 12.

The Court is persuaded that plaintiff has established his entitlement to statutory damages, and it agrees that defendant's willful and knowing conduct warrants a stern response. But it notes that the facts underlying Count One and Count Two overlap substantially, and that it would be engaging in speculation if it attempted to make findings about what plaintiff would have done if Lizette had conducted itself appropriately, and what the cost of the license would have been after negotiations among the parties

Therefore, in its discretion, the Court will award damages as follows:

For Count One: $75,000 for the copyright infringement.

For Count Two: because the removal of the CMI and the knowing substitution of false CMI is an additional statutory violation, that causes additional harm, $4000 per violation, or a total of $64,000.

### III.     Permanent Injunction

Plaintiff requests "a permanent injunction restraining [defendant] from any further unlicensed use of the Photograph, pursuant to 17 U.S.C. §§ 502 & 1203(b)(1)." Compl. at 13 ¶ 2; Mot. at 16. 17 U.S.C. §§ 502(a), 1203 authorize a court to grant temporary and permanent injunctions "as it may deem reasonable to prevent or restrain" infringement of a copyright. "A plaintiff in a copyright action is entitled to an injunction when he [or she] establishes a threat of continuing infringement." *Harrison Music Corp.*, 293 F. Supp. 2d at 83, citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990).

Plaintiff has sufficiently alleged a threat of continuing infringement. Defendant's "predecessor IMG repeatedly infringed upon [plaintiff's] copyright by publicly displaying and distributing the Photograph without a license." Mot. at 16. Although plaintiff and IMG settled their initial dispute, IMG's successor – defendant – continues to infringe upon plaintiff's copyright in violation of 17 U.S.C. §§ 501 & 1202. This past and present infringement "is sufficient to show a pattern and propensity to violate copyright law." *Harrison Music Corp.*, 293 F. Supp. 2d at 83. Defendant will be permanently enjoined from using the Photograph without first abiding by the terms of the License.

## IV.   Attorneys' Fees

This Court has the discretion to award plaintiff full costs and reasonable attorneys' fees. 17 U.S.C. §§ 505 & 1203(b)(4)–(5). A party is entitled to attorneys' fees if "(1) the party whom the fees are awarded qualifies as a 'prevailing party,' and (2) an award of fees is warranted based on the totality of the circumstances surrounding the particular case, in light of a number of [nonexclusive] factors." *Spanski Enterp., Inc. v. Telewizja Polska S.A.*, 278 F. Supp. 3d 210, 213 (D.D.C. 2017), citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

### A.   Prevailing Party

A plaintiff who obtains a default judgment against a defendant qualifies as a "prevailing party." *See Serrano v. Chicken-Out, Inc.*, 209 F. Supp. 3d 179, 194 (D.D.C. 2016), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiff therefore qualifies for the fee award.

### B.   Factor Balancing Test

While "[t]here is no precise rule or formula" for determining reasonable attorneys' fees under section 505 of the Copyright Act, *Fogerty*, 510 U.S. at 534, citing *Hensley*, 461 U.S. 424, 436 (1983), the nonexclusive factors that "guide [the] court's discretion" include "frivolousness,

motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (internal citations omitted). "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016). No one factor is controlling. *Id.*

Plaintiff's claim is objectively reasonable. Defendant's predecessor impermissibly used the Photograph and subsequently settled the matter with plaintiff. Mot. at 3. Defendant then used the Photograph again without plaintiff's permission on sixteen occasions. Compl. ¶¶ 14–17. Plaintiff's copyright claim is an objectively reasonable response to plaintiff's continued and repeated unauthorized use.

"[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works." *Fogerty*, 510 U.S. at 527. To achieve this end, the Copyright Act "strik[es] a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng*, 136 S.Ct. at 1986.

The Court finds that defendant's pattern of copyright infringement, coupled with its failure to answer in this case, warrant an award of fees to deter future infringement. But in order to support such an award, plaintiffs must provide the Court with additional information. Pursuant to *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015), plaintiffs bear the burden of establishing the reasonableness of the hourly rates charged by their attorneys, and "[w]hether an hourly rate is reasonable turns on three subelements: (1) the attorney's billing practices, (2) the attorney's skill, experience, and reputation and (3) the prevailing market rates in the relevant community." *See also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1323

(D.C. Cir. 1982) (plaintiffs must submit "sufficiently detailed information about the hours logged and the work done" and the "complete and standardized time records" must "accurately reflect the work done by each attorney."). Plaintiff will have thirty days from the date of this order to submit the necessary materials in support of the request for attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion for default judgment and permanent injunction. The Court will award plaintiff $139,000 in statutory damages, and an amount of costs and attorneys' fees to be determined.

A separate order will issue.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: June 2, 2021