UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIM PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20–CV–0693 (ABJ) |
| ) | |
| LIFEZETTE, INC. ) | |
| ) | |
| Defendant. ) | |

# ORDER

On March 10, 2020, plaintiff Tim Pierce, a photographer, brought this civil action against defendant Lifezette, Inc., for copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101–810, and the Digital Millennium Copyright Act ("DMCA") of 1998, 17 U.S.C. § 1202. Compl. [Dkt. # 1]. Plaintiff asserted that defendant "repeatedly copied [plaintiff's] photograph and displayed and distributed it on its website and elsewhere without permission and without attribution, knowingly distributing the photograph with false, altered, and removed copyright management information." Compl. at 1. Defendant failed to defend the lawsuit in any capacity; as a result, the Court granted plaintiff's motion for default judgment and request for costs and attorneys' fees on June 2, 2021. *See* Order [Dkt. # 15]; *see also* Memorandum Opinion [Dkt. # 14]; Mot. for Default J. [Dkt. # 10] (SEALED). The order awarded plaintiff $139,000 in statutory damages and permanently enjoined defendant from using the photograph described in plaintiff's complaint without abiding by the terms of the license. Order at 1. As part of that ruling, the Court

1

ordered plaintiff to submit "the necessary materials in support of the request for attorneys' fees." *Id.*

Plaintiff has now submitted those materials. *See* Appl. in Supp. of Pl.'s Request for Att'ys' Fees [Dkt. # 18] ("Pl.'s Appl.") at 1.  For the following reasons, the application will be **GRANTED** and defendant must pay plaintiff's attorneys' fees in the amount of $37,500.00 and costs in the amount of $400.00.

## BACKGROUND

On June 23, 2021, plaintiff filed an application for attorneys' fees seeking $56,379.00 in attorneys' fees and $667.25 in costs, for a total of $57,046.25.  Pl.'s Appl. at 1.  He explains that the "fees incurred in this action" include fees for work performed by lead counsel, Dan Booth at Dan Booth Law LLC, at $425.00 per hour; and by local counsel, J. Mathew Williams, a partner at Mitchell Silberberg & Knupp LLP ("MSK"), and his associates, charging a blended rate of $450.00 per hour.  *Id.* at 2–3 (noting that plaintiff's fee request "reflects the actual and customary fees and rates that counsel charged, and that [plaintiff] paid," and that, while Mr. Booth charged his usual rate, Mr. Williams's rate reflects "a substantial discount").

Plaintiff asserts that the attorneys' rates are reasonable because they are below-market compared to fees charged for similar work by comparable attorneys in the D.C. market.  Pl.'s Appl. at 7, citing the American Intellectual Property Law Association's biennial Report of the Economic Survey ("AIPLA Report"), the Legal Service Index–adjusted Laffey matrix ("LSI matrix"), and the Laffey matrix updated by the U.S. Attorney's Office for the District of Columbia ("USAO matrix").  Plaintiff states that Booth's $425.00 per hour rate is justified by his "16 years of litigation experience," and that the blended rate of $450.00 per hour for local counsel is justified by Williams's "15 years of [legal] experience," Theresa Bowman's "10 years of experience" as an

2

associate, Craig Bradley's "[6] years of experience" as a former associate, and Jim Berkley's $380.00 per hour rate as a "senior research analyst." *Id.* Plaintiff adds that the total number of hours worked is a result of "[defendant's] failure to defend," which "left [him] without recourse to discovery and forced him to prove his case independently." *Id.* at 4. Finally, plaintiff notes that the fee request omits plaintiff's "motion for a status conference" and time spent on a sealed "IMG dispute in 2016 and 2017." *Id.*

## LEGAL STANDARD

The Copyright Act of 1976, 17 U.S.C. § 505, provides that in any copyright infringement action "the court in its discretion may allow the recovery of full costs" and "award a reasonable attorney's fee to the prevailing party as part of the costs."[1] *See also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 519 (1994). Under the DMCA, the Court "in its discretion may award reasonable attorney's fees to the prevailing party." 17 U.S.C. § 1203(b)(5). Interpreting similar language elsewhere in the Copyright Act, the Supreme Court directed courts to "consider the following factors in determining whether to award attorneys' fees: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *See Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 61 (D.D.C. 2015), quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19 (1994). Ordinarily, courts calculate an initial estimate of fees by multiplying "the number of hours reasonably expended on the litigation [] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

---

1   The section provides in full: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

The party seeking fees has the burden of establishing the reasonableness of any fee request. *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The party must establish a reasonable hourly rate by "showing three elements: the attorney's billing practices; the attorney's skill, experience, and reputation; and the prevailing market rates in the relevant community." *Id.* And the party must demonstrate that the hours expended on the litigation were reasonable by showing that the time was productive and not duplicative. *See Env't. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993).

In making the initial fee calculation, the court "should exclude . . . hours that were not 'reasonably expended,'" such as for work that is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Further, the court may consider a variety of factors to determine if the overall fee award should be adjusted "upward or downward, including the important factor of the 'results obtained.'" *Id.*[2] "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce an award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436–37.

## ANALYSIS

---

2   *Hensley* provides a list of twelve factors that a court may consider when determining the reasonableness of a fee request. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 & n.3.

Attorneys for plaintiff pursued this matter appropriately and obtained a default judgment for their client,[3] and therefore, they may receive compensation for the work they performed. The Court agrees that the proposed hourly rates are reasonably supported by industry standards, the attorneys' skill, experience, and reputation, and the prevailing market rates. However, the Court finds, in its discretion, that the total amount requested exceeds the proportionate and reasonable time necessary to achieve the outcome obtained – especially since defendant's lack of participation in the case greatly reduced the number of filings plaintiff needed to submit. Therefore, the Court will reduce the total amount requested, but the award will still fulfill the statutory goals of compensating counsel for their efforts in this case and deterring others from ignoring the rights of copyright holders in the future.

## I.     The Hourly Rates

Prevailing parties must offer evidence to demonstrate their attorneys' experience, skill, reputation, and the complexity of the case they handled. *Covington*, 57 F.3d at 1108. Plaintiff's fee application included information detailing the attorneys' billing practices, skill, experience, and reputation, as well as the prevailing market rates in the District of Columbia, and the showing made was sufficient.

Lead counsel, Dan Booth, submitted declarations explaining that he operates a solo practice and has represented plaintiff for more than five years on copyright matters. Ex. A to Pl.'s Appl. [Dkt # 18–4] ("Booth Aff.") ¶¶ 4, 7. Additionally, Mr. Booth provided information regarding past awards of attorneys' fees for similar services at comparable rates in copyright matters across

---

3      Only prevailing parties may obtain fees. 17 U.S.C. § 505. "By obtaining a default judgment against Defendant, Plaintiff qualifies as a 'prevailing party.'" *Ngena Found. v. F&R Crous Found.*, No. CV 20-793, 2021 WL 1546457, at *4 (D.D.C. Apr. 20, 2021).

multiple district and appellate court jurisdictions.  *Id.* ¶ 12.  Finally, counsel declared that his billing rate of "$425 per hour . . . is well within the usual rate charged in intellectual property litigation by similarly experienced attorneys in this Court."  *Id.* ¶ 13.  He supports this assertion by detailing "usual rates" according to the American Intellectual Property Law Association's biennial survey.  *Id.*  Mr. Booth also says his rates are "substantially below the rates supported by" the *Laffey* matrix for attorneys eleven to nineteen years out of school, and the USAO matrix, all submitted as exhibits to his declaration.  *Id.* ¶ 14.

Plaintiff's fee application also includes J. Matthew Williams's affidavit, which explains his firm's blended hourly rate on copyright matters.  *See* Ex. 5 to Pl.'s Appl. [Dkt # 18–5] ("Williams Aff.").  Mr. Williams detailed the "experience of each attorney and staff person who worked on the matter and [their] standard hourly rates."  *Id.* ¶ 5.  Mr. Williams first explains his standard hourly rate is $715.00 per hour in 2021 and was $695.00 per hour in 2020 as a partner at MSK.  *Id.* ¶ 7.  Mr. Williams supports his hourly rates by comparing them to rates for similar copyright actions brought in the U.S. District Court for the District of Columbia.  *Id.*  Further, Mr. Williams's affidavit explains that Theresa Bowman served as law clerk at this District Court, has worked several copyright cases, included at the Supreme Court and district levels, and earns an hourly rate of $650.00 per hour as a senior associate.  *Id.* ¶¶ 8–9.  Moreover, the Williams affidavit describes the roles played by attorney Craig Bradley and senior research analyst James Berkley, supported by a breakdown of hours, career experience, and services provided by each professional.  *Id.* ¶ 10; Ex. A to Williams Aff.  The declaration asserts that the $450.00 per hour rate was significantly discounted based on the described standard rates and experiences explained above.  *Id.* ¶ 5.

The *Laffey* matrix, supplemented by "surveys to update the matrix[,] affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases," and evidence of fees recently awarded in similar cases, constitutes acceptable evidence of prevailing market rates in the relevant community. *Covington*, 57 F.3d at 1108–09. Counsel submitted information supporting their experience in the legal profession, litigation expertise in copyright matters, and prevailing market rates. Taking all of that into consideration, this Court finds the hourly rate of $425.00 per hour for lead counsel and the blended rate of $450.00 per hour for local counsel to be reasonable.

## II. The Hours Expended and Total Fees Requested

Plaintiff's petition represents that lead counsel billed 5.1 hours from March 2019 through June 2019, for a total of $2,167.50, for reviewing terms of IMG case files, reviewing online infringements on social media, coordinating with new counsel, and drafting the complaint. Booth Aff. ¶ 8; Ex. A to Booth Aff. at 0.[4] The petition also seeks "$17,595.00 for 41.4 hours" for lead counsel's drafting of legal documents, performing administrative functions, communicating with counsel, conducting research on issues presented before the Court, and reviewing or responding to actions requested by the Court. *See* Booth Aff. ¶ 8; Ex. A to Booth Aff. at 1–3. Finally, the submission seeks $9,220.50, for 21.7 "as-yet unbilled hours" spent on the matter after the motion for default judgment was granted in connection with the preparation of the fee application and bill of costs. Booth Aff. ¶¶ 3, 8.

---

4    Lead counsel worked at two law firms while performing work for plaintiff. "Page 0" reflects a one-page summary of charges at the first law firm from May 2019 through June 2019; "pages 1–3" reflect charges from the second law firm from August 2019 through October 2020. *See* Ex. A to Booth Aff. at 0–4 (excluding work from October 9, 2020 through March 17, 2021).

Plaintiff also requests "$20,644[.00]" for 46 hours of work performed by local counsel. *See* Williams Aff. ¶¶ 3–4; Ex. A to Williams Aff.  The fees for local counsel include 11 hours of work, or $4,950.00, performed in connection with the fee petition after the entry of this Court's order in June 2021.   Williams Aff. ¶ 4.

The final request, taking all attorneys into account, is for "$56,379.00 in attorneys' fees, and [] $667.25 in costs."  Pl.'s Appl. at 13.

Review of the materials submitted reflects that the lead and local counsel took steps to avoid the duplication of effort, and the hours spent were largely reasonable.  But the total award requested represents approximately 40% of the $139,000 judgment in this case.  That would be a high ratio given that the only filings of substance in this case were the complaint and the motion for default judgment, and the Court concludes that some adjustment is appropriate in accordance with *Hensley* factor eight, "the amount involved, and the results obtained."  *Hensley*, 461 U.S. at 430 & n.3.  Plaintiff argues that he achieved "exceptional success," and "secured uncommon[] substantive relief," Pl.'s Appl. at 12, but the case was not particularly complex.  The defendant never entered an appearance to challenge any of the allegations, and the legal and factual issues were straightforward.

Also, although counsel made a diligent effort to work efficiently on this case, *see* Booth Aff. ¶ 6 ("I was able to significantly minimize the time needed to prepare the complaint in this action by using as a template a draft complaint I had prepared, but never filed" in a previous dispute), the petition requests compensation for a number of largely administrative tasks.  For example, counsel requests $1,215 for modifying documents to comply with local rules and filing the complaint and *pro hac vice* application, $360 for reviewing and filing the affidavit of service, and $315 for finalizing and filing a default request.  Ex. A to Williams Aff. at 2.  Moreover, the

bills include time for a "senior research analyst" who is not identified as a lawyer. *See* Williams Aff. ¶ 10.

Finally, the Court is troubled by the fact that the amount included for "fees on fees," that is, the $15,972.50 for work done after the default judgment was entered, primarily in preparing an uncontested fee petition, Pl.'s Appl. at 5, is such a substantial portion of the total requested.

## CONCLUSION

After an independent review of the record, including the attorneys' fees petition filed in this case, the time entries and declarations submitted by all attorneys, and based on the Court's ultimate authority and discretion to award attorneys' fees, this Court will **GRANT** plaintiff's request for attorneys' fees. Defendant is **ORDERED** to pay attorneys' fees in the amount of $37,500.00. Additionally, the Court will **GRANT** costs in accordance with plaintiff's request. Pl.'s Appl. at 12. Defendant is **ORDERED** to pay plaintiff $400.00 in costs.[5]

DATE: November 18, 2021

AMY BERMAN JACKSON
United States District Judge

---

5   Plaintiff requested costs for three things: the complaint filing fee, a *pro hac vice* application fee, and the cost of hiring a private process server. *See* Bill of Costs [Dkt. # 19]. However, the cost of hiring a private process server is not reimbursable. *See Zdunek v. Washington Metro. Area Transit Auth.*, 100 F.R.D. 689, 692 (D.D.C. 1983) ("While 28 U.S.C. § 1920(1) authorizes taxation of the service fees charged by the United States Marshals Service, there is no statutory authorization for awarding the fees of special process servers, as costs. Rules 4(c), 45 and Local Rule 1–10(a), which enable individuals other than U.S. Marshals to make service of process, do not require that professional process servers be employed."). And while it is not settled in this Circuit whether *pro hac vice* application fees are reimbursable, this Court will join another court in this District in declining those costs. *See Borum v. Brentwood Vill., LLC*, No. CV 16-1723, 2020 WL 5291982, at *14 (D.D.C. Sept. 4, 2020) ("This Court sees no reason to find *pro hac vice* fees as taxable costs when they are neither expressly stated by statute nor mentioned by the Judicial Conference Schedule of Fees.").